**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| JOHN DOE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-01128-JES-JEH |
| | ) | |
| ILLINOIS STATE UNIVERSITY, JOHN M. | ) | |
| DAVENPORT, as an agent for Illinois State | ) | |
| University, LEVESTER JOHNSON, as an | ) | |
| Agent for Illinois State University, ASHLEY | ) | |
| FRITZ, as an agent for Illinois State | ) | |
| University, JANICE BLAIR, as an agent for | ) | |
| Illinois State University. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants The Board of Trustees of Illinois State University (improperly named as Illinois State University) (the "University"), John M. Davenport, Levester Johnson, Ashley Fritz, and Janice Blair (in their official capacity), hereinafter "Defendants", by and through their counsel, submit this Memorandum in Support of Defendants' Motion to Dismiss Plaintiff John Doe's ("Plaintiff") Complaint.

## I.    INTRODUCTION

Plaintiff John Doe's Complaint ("Complaint") asserts multiple claims challenging the manner in which the University implemented its internal sexual misconduct proceedings – despite the fact that those proceedings followed proper procedure and determined there was insufficient evidence to sustain the charges.  More specifically, Plaintiff disagrees with the University's actions after two complaints of sexual misconduct were made against him by two different fellow students at the University in 2016.  Pursuant to its internal sexual misconduct

procedures and applicable regulatory guidance, the University imposed interim restrictions against Plaintiff pending the resolution of the complaints and, following a hearing, found Plaintiff not responsible for both sexual misconduct charges and rescinded the interim restrictions.

Plaintiff attempts to assert a Title IX claim but fails to allege any mistreatment on the basis of his sex, relying instead only on his status as a "respondent" in the internal proceedings. Courts have repeatedly dismissed similar claims on the grounds that a university's adherence to federal regulatory guidance requiring protections for alleged victims of sexual misconduct while its internal procedure unfolds fails to establish gender bias as required for a Title IX claim.   The Complaint also seeks to assert a due process claim against the University, including a prayer for injunctive relief filed more than a full year after Plaintiff chose not to re-enroll as a student (after he was cleared to do so), as well as Illinois common law and statutory claims against the University based upon the University's proper application of existing procedures.  Courts within the Seventh Circuit have found, however, that *former students* lack standing to enjoin any future university conduct and that due process and state law claims against public universities and their agents in their official capacities are barred by the Eleventh Amendment.  In addition, each of the Complaint's alleged theories challenging the University's proper application of existing internal student conduct procedures regarding sexual misconduct matters fail to state a claim as a matter of law.  Therefore, as examined more fully below, the University requests that this Court dismiss the Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.    FACTS ALLEGED

Plaintiff John Doe was a student at the University for all relevant times at issue, until February 2017.  *See* Compl. at ¶¶65, 109.  Plaintiff was twice accused of sexual misconduct during the fall semester of his senior year, the 2016-2017 academic year.  *Id.* ¶¶79, 88.

A.      The First Report of Plaintiff's Alleged Misconduct by Jane Doe

The University received a complaint that Plaintiff had sexually assaulted a female student, Jane Doe, in November, 2016.  On November 22, 2016 and November 23, 2016, the University delivered to Plaintiff a "No Contact Order" from Dean of Students, John Davenport ("Davenport"), instructing Plaintiff to have no contact with Jane Doe until further notice and a "No Trespass Notice" specifically directing him not to enter locations frequented by Jane Doe, the University's Horton Pool, Horton Field House, and Linkins Dining Center.  *Id.* ¶¶74, 76. The restriction was effective as of November 23, 2016 "for a period of 7 months or until disciplinary sanctions are resolved." *Id.* ¶78.

Plaintiff was also informed via a November 28, 2016 letter from Deputy Title IX Coordinator, Ashley Fritz ("Fritz"), that the University would be initiating a formal investigation into an incident between Jane Doe and Plaintiff that allegedly involved sexual misconduct that occurred on November 6, 2016.  *Id.* ¶79; Exhibit 1.[1]  Specifically, the notice provided:  "This letter is notice that Illinois State University intends to formally investigate an incident occurring on November 6, 2016 12:00AM implicating you… The purpose of this investigation is to gather information related to an alleged violation of University policies as enumerated in the Code of Student Conduct." *Id.*  The letter also requested that Plaintiff attend a meeting on December 2,

---

[1] Although evaluation of a motion to dismiss for failure to state a claim is generally limited to review of the facts alleged in the pleadings, a court may consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *see Lott v. Levitt*, 469 F. Supp. 2d 575, 577 n. 1 (N.D. Ill. 2007) (allegedly defamatory book is considered a part of the pleadings and properly considered on a motion to dismiss defamation claim). Further, to the extent that such a document conflicts with the allegations of the complaint, the document controls. *See, e.g., Massey v. Merrill Lynch & Co.,* 464 F.3d 642, 645 (7th Cir. 2006). The Complaint references the following documents from the internal process that are central to Plaintiff's claims and are attached here as Exhibits 1-4:  November 28, 2016 notice letter to Plaintiff (quoted in paragraphs 79-81) (Exhibit 1); December 15, 2016 notice of second investigation letter to Plaintiff (Exhibit 2); December 15, 2016 letter to Plaintiff from Johnson (Exhibit 3); and December 22, 2016 letter to Plaintiff from Johnson (Exhibit 4).  Defendants note that some dates listed in the Complaint conflict with the actual documents referenced, and that this Memorandum states the dates in the documents themselves.

2016 with Fritz.  *Id.* ¶80.  The letter explained that if the matter proceeded to investigation, it would be sent to a Senior Specialist in the Student Conduct and Conflict Resolution, Janice Blair ("Blair").  *Id.* ¶81.

### B.    The Second Report of Plaintiff's Alleged Misconduct by Jane Roe

After initiating the first investigation process, the University received a second complaint of sexual misconduct about Plaintiff from a different female student, Jane Roe, which had allegedly occurred approximately one year prior to Jane Doe's allegation.  *Id.* ¶88.   The University delivered to Plaintiff, on December 15, 2016, two e-mails:  (1) an email from Dean Davenport instructing Plaintiff that he was to have no contact with Jane Roe, and (2) an email from Deputy Title IX Coordinator Fritz, advising Plaintiff that the University would investigate an incident occurring on November 6-7, 2016 at his residence.  The email included the following details:  "Specifically, an ISU student reported that you sexually assaulted her.  The female student alleges that she said no multiple times and you engaged in nonconsensual sexual activity with her.  The purpose of the investigation is to gather information related to an alleged violation of University policies as enumerated in the Code of Student Conduct."  *Id.* ¶89; Exhibit 2.  The meeting was set for December 20, 2016 at 1:00 pm in the Student Affairs Title IX Office.  *Id.* The notice again provided that should the matter proceed to investigation, it would be handled by Blair.  *Id.* ¶89

### C.    Interim Suspension

Also on December 15, 2016, the University's Vice President for Student Affairs, Levester Johnson ("Johnson") issued a letter to Plaintiff responding to receipt of two separate sexual misconduct allegations indicating the possibility of an interim suspension. *Id.* ¶92; Ex. 3. Specifically, Johnson informed Plaintiff: "I am sufficiently concerned about your reported behavior that it appears an interim suspension from ISU may be necessary to ensure the safety of

the ISU community," that the "potential action" related to "two alleged incidents" involving alleged sexual assault of two different students, and that such a suspension could include barring Plaintiff from being on campus, attending classes, facilities, etc. *Id.* ¶92. The letter invited Plaintiff to "provide any information," "in person and/or in writing," prior to a decision on the potential interim sanction by a meeting set for the afternoon of December 19, 2016.

Instead of meeting with Johnson, Plaintiff sent a letter via a representative dated December 19, 2016. *Id.* ¶93; Ex. 4. Johnson then sent Plaintiff a letter dated December 22, 2016 noting Plaintiff's decision not to meet with Johnson about the interim suspension issue, Johnson's review of the letter from Plaintiff's representative and "all the information I have available to me at this time," and conveying the decision to issue an "interim suspension from Illinois State University" that was "based on two alleged incidents of sexual assault that have been reported to the University." The letter further stated that "a proceeding to resolve the alleged violations of the Code shall be convened at the earliest possible time" and that "the interim suspension will remain in effect until a final decision has been reached, including any appropriate appeals process." Ex. 4.

### D. The University's Title IX Investigation and Administrative Hearing Process

On January 12, 2017, the Student Conduct and Conflict Resolution had requested Plaintiff's attendance at a meeting on January 19, 2017 to discuss his response to the charges against him. *Id.* ¶98-99. The letter explained that if a resolution during that meeting could not be reached, the matter would then proceed to the administrative hearing process with Blair on January 26, 2017. The letter also provided that during the meeting, Plaintiff's rights and responsibilities during the administrative hearing process would be reviewed. *Id.* Rather than attend the January 19th meeting, however, Plaintiff's counsel, Johnson Law Group, advised

University personnel that Plaintiff would be "opting out" of the meeting and "requesting to move forward with the formal hearing scheduled for January 26, 2017." *Id.* ¶101.

On January 26, 2017, Plaintiff attended two separate hearings about the allegations of Jane Doe and Jane Roe, along with his "advisor" the Johnson Law Group. *Id.* ¶102. In accordance with University policy, Plaintiff's advisor/attorney was limited to serving in a purely advisory role. *Id.*; 2016 Code of Student Conduct p. 16, #4, p. 28 #5.[2] The allegations from Jane Doe were addressed over a period of two and half hours, during which both Jane Doe and Plaintiff provided testimony. *Id.* Pursuant to University policy, no direct cross-examination was allowed, but Plaintiff was permitted to request that Blair ask Jane Doe questions. *Id.*; 2016 Code of Student Conduct p. 16, #9, p. 28 #6 ("A student has the right to hear and respond to all information presented against the student. This includes the right to question all involved parties through an administrative hearing officer or the University Hearing Panel"). In addition to asking Jane Doe questions, Blair read the written report that had been submitted by the Normal Police Detective Brad Park, who also attended and spoke during the hearing, and read the written report that had been submitted by Fritz. *Id.* ¶102. The allegations from Jane Roe were addressed without Jane Roe, who did not attend the hearing. *Id.* The investigative report conducted by Fritz was read into the record, and Plaintiff was given the opportunity to speak. *Id.*

### D.      Finding of No Violation in Both Cases

On February 1, 2017, the University issued its findings in both cases involving Plaintiff and found in Plaintiff's favor. *Id.* ¶103. With respect to the allegations by Jane Doe, the University concluded that Jane Doe had provided consistent statements that the sexual intercourse with John Doe was nonconsensual and that Plaintiff had stated that all sexual contact

---

[2] The 2016 Code of Student Conduct is attached as Exhibit C to Plaintiff's Complaint.

was consensual.  *Id.* As there was no independent information to corroborate either side, it was determined that there was insufficient information to support a finding that nonconsensual contact had occurred, and therefore, Plaintiff was found to not have violated Code of Student Conduct regulation D1 or D2.  *Id.*  With respect to the allegations by Jane Roe, the University concluded that there was not a preponderance of information to find that Plaintiff violated Code of Student Conduct regulation D1 or D2.  *Id.*

University policy permitted 10 calendar days to appeal, but no parties appealed the aforementioned findings.  *Id.* ¶104; 2016 Code of Student Conduct p. 35, #3A.  So, on February 14, 2017, Blair informed Plaintiff that no appeals had been submitted and therefore the decisions from the formal hearings would be final.  *Id.* ¶108.  Blair also informed Plaintiff that she had communicated that information to the Vice President of Student Affairs Office and the Dean of Student's Office, and Plaintiff would be receiving an official notification regarding the interim suspension, campus restriction, and contact restrictions.  *Id.*  As promised, Plaintiff was informed via a February 16, 2017 letter from the Vice President of Student Affairs that the interim suspension, campus restrictions, and contact restrictions were rescinded.  *Id.* ¶109.

### E.    Plaintiff's Lawsuit

Although Plaintiff was no longer suspended as of February 16, 2017, Plaintiff did not re-enroll in classes and has never sought to re-enroll at the University.  Instead, Plaintiff filed this lawsuit more than a full year later, on March 27, 2018, against the University and four individuals (Davenport, Johnson, Fritz, and Blair) as "agent[s] for Illinois State University."[3]  In his Complaint, Plaintiff challenges the University for its response to Jane Doe and Jane Roe's

---

[3] The Complaint does not specify whether it pursues claims against the individual defendants in their official or individual capacities, but lists each in the caption as named "as an agent for Illinois State University."  As such, this Memorandum treats all claims as against them in their official capacity; if Plaintiff later clarifies an intent to sue them in their individual capacities, Defendants reserve the right to address such claims independently.

allegations, the investigation and hearing, and the imposition of interim measures by limiting his access to certain portions of campus and then placing him on interim suspension.   Plaintiff asserts the following claims:   Section 1983 Due Process against the University (Count I); Title IX ("Severity of Penalty/Selective Initiation") against all Defendants (Count II); and Illinois state law claims against the University for Breach of Contract (Count III), Promissory Estoppel (Count IV), Negligent Infliction of Emotional Distress (Count V), and Unfair or Deceptive Trade Practices (Count VI).

## III.   ARGUMENT

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of claims where the court lacks federal jurisdiction over the lawsuit. *See Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). A challenge to standing is properly brought under Rule 12(b)(1) for lack of subject matter jurisdiction.  *See Doe v. Purdue University*, 281 F. Supp. 3d 754, 763 (N.D. Ind. 2017).  The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists.  *Id*.  In evaluating a motion pursuant to Rule 12(b)(1), a court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff, and also considers evidence extrinsic to the pleadings.  *See Scanlan*, 669 F.3d at 841; *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).  A dismissal pursuant to Rule 12(b)(1) is without prejudice.  *See T.W. by Enk v. Brophy*, 124 F.3d 893, 898 (7th Cir. 1997).

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Mutter v. Madigan*, 17 F. Supp. 3d 752, 757 (N.D. Ill. 2014). In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must be supported by allegations that, if taken as true, plausibly suggest that the plaintiff is entitled to relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  The court must accept the

well-pleaded allegations in the complaint as true; however, legal conclusions and conclusory statements are not taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief as is required by Rule 8. *Id.* at 679.

**B.     Plaintiff's Claims for Prospective Injunctive Relief (Counts I & II) Fail for Lack of Standing.**

The Complaint asserts several claims against the University and individual University officers in their official capacity, who can only be sued for prospective injunctive relief. *See* Section C, *Infra*. Yet, as a former student without continuing ties to the University or any request for reinstatement, Plaintiff lacks standing to assert such claims requiring dismissal of his claims for injunctive relief against the University and official capacity defendants. *See Doe v. Purdue Univ.*, 281 F. Supp. 3d 754, 765 (N.D. Ind. 2017) (finding former student lacked standing to pursue similar claims).

To establish Article III standing, a plaintiff must demonstrate three elements: (1) an "injury in fact" – an invasion of a legally recognized interest which is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal link between that injury and the defendant's action, such that the injury is fairly traceable to the action complained of; and (3) that a favorable decision will likely redress the injury. *Sierakowski v. Ryan*, 223 F.3d 440, 442–43 (7th Cir. 2000). A plaintiff is required to demonstrate standing for each form of relief sought. *See Derfus v. City of Chicago*, 42 F. Supp. 3d 888, 895 (N.D. Ill. 2014). Thus, standing for a damages claim based on past alleged conduct is insufficient to confer standing for prospective injunctive relief. *See id.*; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 95-96 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse

effects."). To establish standing for prospective injunctive relief, a plaintiff "must show a significant likelihood and immediacy of sustaining some direct injury." *Sierakowski*, 223 F.3d at 443-45 (plaintiff challenging statute authorizing unconsented HIV testing based on a physician's judgment lacked standing for injunctive relief where his allegations did not establish he would likely be tested for HIV again without his consent); *see also Knox v. McGinnis*, 998 F.2d 1405, 1413 (7th Cir. 1993) (prisoner challenging restraints used in segregation unit lacked standing for injunctive relief where he was no longer in the unit and did not establish a "real and immediate threat" he again would be subjected to the restraints).

Plaintiff's Complaint prays for the following injunctive relief:

- "[A]n injunction enjoining violations of the Fourteenth Amendment in the process of investigating and adjudicating sexual misconduct complaints." Cmplt. at 58.

- "[A]n injunction enjoining violations of [] Title IX in the process of investigating and adjudicating sexual misconduct complaints." Cmplt. ¶ 168; *id*. at 59.

The Complaint does not allege that Plaintiff is currently attending the University or that he seeks to return to the University. To the contrary, Plaintiff asserts only that he *was* a student at the University during the events at issue and withdrew long ago (February 2017). Cmplt. ¶¶ 2, 8, 10. The Complaint concerns only past alleged procedural issues from the University's sexual misconduct enforcement efforts without asserting that Plaintiff is currently subject to the University's policy or will be subject to it in the future, and it does not seek injunctive relief with respect to any *prospective* interaction between Plaintiff and any defendant. As ruled in a case with *identical* allegations to Plaintiff's, this is fatal to Plaintiff's claims for injunctive relief. *See Doe v. Purdue Univ.*, 281 F. Supp. 3d 754, 765 (N.D. Ind. 2017) (student suspended for violating university's sexual misconduct policy lacked standing to bring claims for injunctive relief where student did not seek injunctive relief with respect to any prospective interaction between himself

and any defendant).[4]  Plaintiff thus lacks standing to pursue claims for injunctive relief under Section 1983, and his prayers for injunctive relief in Counts I and II must be dismissed pursuant to Rule 12(b)(1).

### C. Plaintiff's Due Process Claim Against the University (Count I) Must be Dismissed Under Rule 12(b)(1) as Barred by the Eleventh Amendment and § 1983, and Under 12(b)(6) for Failure to State a Claim.

In Count I, Plaintiff brings a claim pursuant to 42 U.S.C. § 1983 against the University, alleging that the University deprived him of his Constitutional "liberty and property interests" without due process in its investigation and adjudication of the sexual misconduct complaints against him.  *See* Cmplt. ¶¶ 141-44.  Plaintiff's § 1983 claim fails for multiple reasons.  As a threshold matter, it is barred by both the Eleventh Amendment and § 1983, and it further fails to state a claim in failing to identify a cognizable property or liberty interest at issue.

### 1. The Eleventh Amendment Bars Plaintiff's § 1983 Claim.

The Eleventh Amendment bars claims in federal court against a state, a state agency, or state officials acting in their official capacities.  *Council 31 of AFSCME v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012).  There are three exceptions to the state's sovereign immunity under the Eleventh Amendment: (1) a state can consent to a suit; (2) Congress can abrogate a state's immunity in the drafting of a federal law; and (3) the doctrine established by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), which "allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law."  *Mutter v. Madigan*, 17 F. Supp. 3d 752, 757 (N.D. Ill. 2014) (quoting *Council 31 of AFSCME*, 680 F.3d at 882).  None of these exceptions are present here.  The State has not consented to suit, and § 1983 is not

---

[44] As noted in subsequent sections of this Memorandum, Plaintiff's Complaint appears to have copied verbatim a substantial number of allegations from the complaint that was dismissed in *Purdue*, including the injunctive relief allegations.  *Purdue,* 281 F. Supp. 3d at 764-65.  *See also,* Section D, *supra.*

an exception to sovereign immunity. *See Osteen v. Henley*, 13 F. 3d 221, 223-24 (7th Cir. 1993); *Mutter*, 27 F. Supp. 3d at 757.

Further, although Plaintiff asserts his § 1983 claim against the University only, the Eleventh Amendment also bars any attempt to assert this claim against the individual defendants. The individual defendants are named in the Complaint in their official capacities. Specifically, these defendants are named in the caption of the Complaint as "agent[s]" for the University and Plaintiff further alleges that "at all material times," they "were acting in the course and scope of their respective agency or employment." Cmplt. ¶12. Suits against state officials in their official capacities are considered suits against the state and are barred by the Eleventh Amendment, unless they fall within the *Ex parte Young* exception. *See Osteen*, 13 F.3d at 223. That exception permits claims against individual officials in their official capacities only for *prospective* injunctive relief to enjoin *ongoing* violations of federal law. *Mutter*, 17 F. Supp. 3d at 757 (emphasis added). As discussed in Section B above, Plaintiff alleges only a past violation of federal law; he complains only of the University's past enforcement of its policy. He does not allege any *ongoing* violation against him or seek injunctive relief with respect to any *prospective* interaction between him and any defendant. Accordingly, to the extent Plaintiff's § 1983 claim is asserted against any individual defendant(s), Plaintiff cannot satisfy the *Ex parte Young* exception. *See Purdue*, 281 F. Supp. 3d at 766-77 (dismissing student's § 1983 claims against individual university officials as barred by sovereign immunity where plaintiff alleged only a past violation of federal law in challenging university's past adjudication of a sexual misconduct complaint against him). The Eleventh Amendment thus bars Plaintiff's § 1983 claim for monetary damages and injunctive relief in its entirety, and Count I must be dismissed for lack of jurisdiction pursuant to Rule 12(b)(1).

### 2.      Plaintiff fails to state an actionable Section 1983 claim.

Similarly and in addition, Count I fails because § 1983 provides a cause of action only against a "person", 42 U.S.C. § 1983, and the University is not a "person" within the meaning of the statute.  The University is an agency of the state of Illinois.  *See* 110 ILCS 660-691 (statutes governing Illinois "public universities", including Illinois State University, 110 ILCS 675/20-1 *et seq*.).  The United States Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Carmody v. Bd. of Trustees of Univ. of Illinois*, No. 16-1335, -- F.3d ---, 2018 WL 3029543, at *4 (7th Cir. June 19, 2018).  For this additional reason Plaintiff's § 1983 claim is barred in its entirety and must be dismissed for lack of jurisdiction pursuant to Rule 12(b)(1).

### 3.      The Complaint fails to state a claim for violation of the Fourteenth Amendment.

A claim for a violation of procedural due process under the Fourteenth Amendment requires a two-step analysis:  first, the Court must determine whether the plaintiff was deprived of a liberty or property interest; and if so, it must determine what process was due.  *Charleston v. Bd. of Trs. of Univ. of Illinois at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013).  In other words, to state a procedural due process claim, Plaintiff must establish that he had a cognizable property or liberty interest under the Fourteenth Amendment; that the University deprived him of that interest; and that the deprivation was without due process.  *See O'Gorman v. City of Chicago*, 777 F.3d 885, 891 (7th Cir. 2015).  Here, Plaintiff fails to sufficiently allege a constitutionally protected property or liberty interest of which the University allegedly deprived him, further dooming Count I as explained below.

### i.  Plaintiff has not identified a cognizable property interest.

As an initial matter, Plaintiff does not identify in his Complaint any alleged "property" interest is at issue; he claims only in the most general terms that he had, and the University deprived him of, a "property" interest.  *See* Cmplt. ¶ 142.  To the extent Plaintiff attempts to assert he had a property interest in his continued education at the University, such a claim clearly fails. The Seventh Circuit has specifically and repeatedly held that an individual does not have a stand-alone property interest in an education at a state university.  *Charleston*, 741 F.3d at 772–73 (citing *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009)); *Purdue*, 281 F. Supp. 3d at 769 (N.D. Ind. 2017); *Preston v. Bd. of Trs. of Chi. State Univ.*, No. 14 C 3423, 2015 WL 327369, at *7 (N.D. Ill. Jan. 26, 2015).  Rather, as the *Purdue* court recently summarized, to establish such a property interest, the Seventh Circuit requires a plaintiff to show that he has a "*legally protected entitlement* to his continued education at the university."  *Purdue*, 281 F. Supp. 3d at 769 (quoting *Charleston*, 741 F.3d at 773) (emphasis in original).  To do so, Plaintiff must show that a contract existed between himself and the University that entitled him to a *specific* right and must identify a specific contractual promise or term that the University failed to honor.  *Id.*; *Bissessur*, 581 F.3d at 602; *Marmarchi v. Bd. of Trs. of Univ. of Illinois*, 715 F. App'x 529, 533 (7th Cir. Nov. 7, 2017).

Plaintiff's Complaint lacks any effort to carry this burden and does not identify with specificity any contractual promise by the University allegedly creating such a legal entitlement. Rather, Plaintiff asserts only that he had a constitutionally protected property interest or entitlement to a "fair process" or a certain *procedure* before being suspended from the University.  Plaintiff alleges:

- "Like all respondents at [the University], who are habitually male, [Plaintiff's] rights to a fair process were violated by the application of a discriminatory sexual misconduct policy…." Cmplt. ¶112.

- The University violated his due process rights "through its repeated acts of gender bias and of deprivation of the minimal requirements of procedural fairness." Cmplt. ¶141.

- The University "deprived Plaintiff of his liberty and property interests without affording him basic due process, including, but not limited to:  his right to a fair adjudication; his right to be promptly informed of the exact charges against him; his right to be heard by an impartial fact finder; his right to question his accuser; and his right to question and challenge the credibility of any adverse witnesses." Cmplt. ¶142.

- The University "failed to provide Plaintiff with the basic due process protections, that they are required to provide to students accused of sexual misconduct, in violation of the 14th Amendment." Cmplt. ¶143.

- The University "violated the rights and guarantees set forth in the [Fourteenth Amendment] during the investigation and adjudication of the complaints against [Plaintiff]." Cmplt. ¶144.

Under well-established law, an alleged "entitlement" to a fair procedure does not establish a property interest.  *Williams v. Wendler*, 530 F.3d 584, 589-90 (7th Cir. 2008).  Indeed, this very argument has been considered and rejected by the Seventh Circuit in *Williams*, in which three students suspended for hazing argued that the university's disciplinary procedure that led to their suspension was "a sham."  *Id*. at 589.  The Seventh Circuit criticized the plaintiffs' attempt to assert an entitlement to a fair procedure on the grounds that this argument was premised "entirely on the bald assertion that any student who is suspended from college has suffered a deprivation of constitutional property."  *Id*.  This "cannot be right," the Seventh Circuit stated:

> not only because it would imply that a student who flunked out would have a right to a trial-type hearing on whether his tests and papers were graded correctly and a student who was not admitted would have a right to a hearing on why he was not admitted; but also because the Supreme Court requires more.  It requires, as we know, proof of an entitlement ....  That is a matter of the contract, express or implied, between the student and the college.  *Id*.

In other words, there is no "entitlement" to fair procedure because to find otherwise would "dissolve the requirement of showing a deprivation of life, liberty or property as a precondition to complaining about a denial of due process."  *Id*. at 590; *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("'Property' cannot be defined by the procedures

provided for its deprivation any more than can life or liberty.").  As in *Williams*, Plaintiff has not alleged a legal entitlement or identified a specific promise that the University failed to honor, and his due process property interest claim must accordingly be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

### ii. Plaintiff has not identified a cognizable liberty interest.

Plaintiff describes his alleged liberty interest as follows: "A person has a protected liberty interest in his good name, reputation, honor, and integrity, of which he cannot be deprived without due process." Cmplt. ¶129.  He alleges the following in the Complaint with regard to the alleged damage to his reputation:

- Plaintiff "lost almost all of his friends due to [the University's] unfair treatment…" Cmplt. ¶111.

- "The University['s] restrictions placed upon [him] and the suspension rendered by [the University] against [him] for unfounded allegations of sexual misconduct cause him severe damages including … damages to his good name, reputation, honor, and integrity …" Cmplt. ¶113.

- "Through its deeply unfair sexual misconduct policy, [the University] has [] branded [Plaintiff] as a sexual offender…" Cmplt. ¶115.

- Plaintiff "will be stigmatized for years to come by the fact that [the University] charged him with sexual assault." Cmplt. ¶116.

- "[T]he charges and the interim suspension that [the University] meted out will continue to exist in [Plaintiff]'s college record. This has caused continuing negative blemishes in [his] academic record making admission as a transfer student to another college or university of the same or similar caliber to [the University] unlikely if not impossible and severely disadvantages [Plaintiff] in future academic, professional, and career opportunities." Cmplt. ¶117.

- "Besides the irreversible damage to his college, post-graduate, employment, and earning prospects, the University's charges of sexual assault have a lasting social and reputational harm." Cmplt. ¶118.

Such allegations are insufficient as a matter of law.  In the Seventh Circuit, "[i]t is well-established that an individual does not have any cognizable liberty interest in his reputation, and therefore mere defamation by the government does not deprive a person of liberty protected by

the Fourteenth Amendment, even when it causes serious impairment of one's future employment." *Purdue*, 281 F. Supp. 3d at 773 (quoting *O'Gorman*, 777 F.3d at 891). "Rather, it is only the alteration of legal status, such as governmental deprivation of a right previously held, which, combined with the injury resulting from the defamation, justifies the invocation of procedural safeguards. *Id*. (quoting *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013)). The relevant inquiry is thus whether there is an injury to reputation *along with* a change in legal status. *Id*.

Here, Plaintiff alleges only that the University damaged his reputation by imposing a two-month interim suspension after receiving two separate sexual assault complaints against him during the pendency of the internal adjudication proceedings. As set forth above, however, Plaintiff's suspension did not alter a previously recognized legal status or right – he had no constitutional right to continued education at the University. Further, even assuming that Plaintiff could assert a right to pursue higher education generally, there is no liberty interest in pursuing higher education specifically at Illinois State University. *Despard v. Bd. of Trustees of Indiana Univ.*, 2015 WL 4946112, at *3 (S.D. Ind. Aug. 18, 2015) (noting that liberty interest "would lie in [student's] right to study generally, not in a right to study at a particular institution"). Plaintiff therefore cannot maintain a due process claim based solely on alleged harm to his reputation. *See Park v. Ind. Univ. Sch. of Dentistry*, 781 F. Supp. 2d 783, 789 (S.D. Ind. 2011). Accordingly, Plaintiff's due process liberty interest claim must also be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

**D.    Count II Does Not Allege A Viable Title IX Claim Against Any Defendant.**

Plaintiff's attempt to allege a Title IX claim in Count II fails to satisfy the fundamental requirement to plead any Title IX discrimination claim: alleged mistreatment on the basis of sex in connection with an education program. *See* 20 U.S.C. § 1681(a); *Doe v. Columbia College,*

*Chicago*, 299 F. Supp. 3d 939, 950-51 (N.D. Ill. 2017); *Doe v. University of Chicago*, No 16 C

08298, 2017 WL 4163960, at **4, 7 (N.D. Ill. Sept. 20, 2017); *Ludlow v. Northwestern Univ.*, 79

F. Supp. 3d 824, 835 (N.D. Ill. 2015); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).

Courts evaluate such claims under various theories unique to the nature of the procedural aspects

of a claim, such as "selective enforcement" or "erroneous outcome," but always require

allegations of gender based mistreatment.   In particular, many courts dismiss Title IX claims

asserting only conclusions of gender bias rather than "particularized facts."[5]  *See Purdue*, 281 F.

Supp. 3d at 775-776 (collecting cases).   And, the required element of "gender bias" is not

sufficiently pled by allegations that a university is biased in favor of victims of sexual assault,

"who can be both male and female."  *Id.*, citing *Doe v. Cummins*, 662 Fed. Appx 437, 453 (6th

Cir. 2016); *see also Columbia College Chicago*, 299 F. Supp. 3d at 955-57 (N.D. Ill. 2017)

(collecting cases and noting universities are not "responsible for the gender makeup of those who

are accused by other students of sexual misconduct"").

Plaintiff's alleged Title IX claim in Count II asserts what Plaintiff labels as a "severity of

penalty/selective initiation" theory, explained as "regardless of the student's guilt or innocence,

the severity of the penalty and/or decision to initiate the proceeding was affected by the student's

gender."  *See* Cmplt. at ¶ 157.  When faced with literally identical allegations, the Purdue court

recognized this as a "selective enforcement" claim that had to be dismissed for multiple reasons

that require dismissal of Count II here.  *Purdue*, 281 F. Supp. 3d at 783-84.

### 1.    Plaintiff Fails to Allege Any Gender-Based University Action.

---

[5] A third theory called "deliberative indifference" also exists, but it requires (among other factors) allegations of sex-based conduct adverse to a plaintiff, not just procedurally-based challenges to an institution's internal proceedings. *Doe v. University of Chicago,* No. 16 C 08298, 2017 WL 4163960, at *7 (N.D. Ill. Sept. 20, 2017).  Plaintiff's challenge to the University's procedure for addressing claims of sexual assault against him is not itself sex-based and thus incapable of stating a deliberate indifference claim.  *Id.* at *9 (collecting cases holding that even false accusations of sexual assault cannot constitute harassment "based on sex").

Plaintiff's Title IX discrimination claim attacks the University based upon decisions and proceedings relating to Plaintiff's status as a student accused of sexual misconduct, incorrectly assuming that such status automatically raises issues of gender bias.  A growing chorus of courts have squarely rejected this assumption and dismissed similar claims.  *See Doe v. Univ. of Massachusetts-Amherst*, No. 14-cv-30143 MGM, 2015 WL 4306521, at * 8-9 (D. Mass. July 14, 2015) (dismissing Title IX claim based only on comments targeting student as accused of sexual assault not any comments "based on his gender" or "suggestion of gender bias"); *Doe v. Baum,* 227 F. Supp. 3d 784, 817 (E. D. Mich. 2017) (dismissing for failure to state a claim given absence of gender-bias allegations); *Purdue,* 281 F. Supp. 3d at 775-76; *Cummins*, 662 Fed. Appx at 452-54.

Instead, to aver gender bias, courts require gender-biased statements by personnel involved with internal proceedings or a pattern of gender-biased decisions emanating from such proceedings.  *See Columbia College Chicago,* 299 F. Supp. 3d 939, 950-51 (N.D. Ill. 2017); at *Cummins,* 662 Fed. Appx at 449-450 (explaining that absence of such statements require dismissal for lack of gender bias); *Yusef,* 35 F.3d at 715.  The Complaint contains no such allegations of statements by University personnel but, rather, tracks the allegations about internal process found insufficient in the *Purdue* case.  For instance, Plaintiff alleges:

- "John Doe was innocent despite being wrongly accused to have committed sexual assault, wrongfully subjected to the adjudication process, wrongly sanctioned and, gender bias was a motivating factor";

- "The denial of due process and the procedural errors made in this case resulted in a 'severity of penalty/selective initiation' based on a flawed Title IX system";

- Defendant "failed to conduct an adequate, reliable, and impartial investigation" and made "erroneous pre-hearing conclusions that John Doe had engaged in misconduct";

- Defendant "relied in part on statements from approximately 10 witnesses . . . who were not physically produced at the hearing for cross examination";

- From the moment Jane Doe reported her allegations to the University, Defendants barred John Doe from portions of the University's campus and, shortly thereafter, suspended John Doe from the entire University and separated him from his support system";

- "the majority, if not all, of students that have been suspended or expelled from Defendant ISU for sexual misconduct have been male";

- Male respondents "are invariably subjected to selective prosecution, severe sanctions and are often found guilty, regardless of the evidence or lack thereof."

Complt. at ¶¶ 158-166. Faced with nearly identical allegations, the *Purdue* court required dismissal because such allegations merely attack "the procedural protections" afforded a student during a disciplinary process without "any specific statements, conduct, or a pattern of decision making suggestive of gender bias" at an institution "as opposed to bias in favor of the victim of sexual assault." *Purdue*, 281 F. Supp. 3d at 775. Of course, one big difference here is that Plaintiff was not even found "guilty" or responsible but exonerated, which reveals the opposite of gender bias because he is male.

As in other dismissed cases, Plaintiff "does not allege any statements from university officials about gender bias at [the University], did not show that a key university official had recently endorsed an article biased towards female victims, and . . . does not allege that [University's hearing officer] encouraged the victim to file a false complaint or drastically changed their position during the disciplinary process." *Columbia College Chicago,* 299 F. Supp. 3d at 955. Many courts recognize the absence of such specific allegations of the manifestations of gender bias within officials' efforts to implement internal processes as requiring dismissal of Title IX claims. *Yusuf,* 35 F.3d at 715; *Purdue*, 281 F. Supp. 3d at 775; *Baum,* 227 F. Supp. 3d at 817.

Moreover, because he was ultimately exonerated, the gist of Plaintiff's claims really focus on the fact that University personnel charged with implementing protections for all

potential victims of sexual assault (regardless of gender) required "interim measures," which were intended to protect the alleged victims and others while his case was processed.  Here, such measures took the form of initially barring Plaintiff from contact with the first alleged victim, including being limited from certain buildings she was likely to be in, and, when a second victim asserted charges, imposing an interim suspension on Plaintiff from all University endeavors to further protect both alleged victims and all other students.  Complt. at ¶¶92-95.  That suspension lasted a mere two months, starting after classes ended for the Fall 2016 semester, including the University's multi-week holiday break during which the University is closed, and ending approximately 3-4 weeks into the Spring 2017 semester.  Cmplt. at ¶¶95, 109.  Plaintiff was then free to resume classes and engaging in life as a student at the University, but the Complaint fails to allege that he ever even tried to do so.

Courts within and outside the Seventh Circuit repeatedly and uniformly recognize that such "interim measures" to protect alleged victims are required by federal law, do not violate Title IX, and are not evidence of gender bias.  *Columbia College Chicago,* 299 F. Supp. 3d at 956 (ruling that a "decision to provide interim measures to [complainant] and not to [respondent] demonstrates, if anything, a legitimate and reasonable bias in favor of alleged victims of sexual assault" not gender bias); *Univ. of Chicago*, 2017 WL 4163960, at * 5 (finding University's efforts to comply with OCR recommendations for handling sexual-assault complaints fail to reveal any gender bias, including removal of respondent from class to minimize contact with alleged sexual assault victim); *Cummins*, 662 Fed. Appx at 452 (finding that claims based on "accommodations offered to the complainants during the investigatory process are evidence of gender bias . . . fail because such accommodations were required by federal regulations"); *Doe v. University of Cincinnati,* 173 F. Supp. 3d 586, 607 (N.D. Ohio 2016) (barring alleged sexual

assailant from access to particular buildings not evidence of gender bias).  Accordingly,

implementation of interim measures to protect alleged victims of sexual assault cannot, as a

matter of law, support any inference of gender bias.

In, addition, gender bias cannot be inferred from Plaintiff's additional assertions that the

University was "pressured by the Obama Administration's Department of Education" to unfairly

process the complaints against him to avoid federal regulatory scrutiny as set forth in a series of

boiler-plate allegations.  Compl., ¶¶120-126, 163. Courts routinely reject any gender-bias

inference, under Iqbal pleading standards, from such general "pressure" assertions without

specific allegations of particular pressure on university personnel in the case in question, which

is completely lacking here.  *Columbia College Chicago* 299 F. Supp. 3d at 953; *Western New*

*England Univ.*, 2017 WL 113059 at *29; *see also Ludlow*, 125 F. Supp. 3d at 792 ("alleging that

the Northwestern investigation was a result of outside pressure groups does not create the

plausible inference—even if those groups were women's groups—that Northwestern

investigated because Ludlow was a man, not because the charge was rape"); *Neal v. Colorado*

*State University-Pueblo*, No. 16–cv–873–RM–CBS, 2017 WL 633045, at *9-10 (D. Col., Feb.

16, 2017); *Doe v. University of Cincinnati*, 173 F. Supp. 3d 586, 606 (Mar. 23, 2016); *Yusuf*, 35

F.3d at 715.  As recently observed by a court within the Seventh Circuit:

> "The allegations concerning the Department of Education at most raise the prospect that
> the OCR believes that campus sexual assault of women is a problem.  The University's
> adoption of positions recommended by the federal government does not in turn suggest
> that the University did so because of gender bias."

*Univ. of Chicago,* 2017 WL 4163960*, *5*.  The lack of any gender bias allegations requires

dismissal of Count II under any Title IX theory.

> 2.  **Plaintiff Lacks Any Allegations of Similarly-Situated Students**
> **Required to Assert a Selective Enforcement Claim.**

In addition to lacking any specific gender-bias allegations required of all Title IX discrimination claims, the Complaint fails to allege the existence of any similarly-situated female students treated more favorably than him, as specifically required to assert a claim for "selective enforcement."  When the theory is used to challenge the severity of a penalty, courts:

> [R]equire a plaintiff to allege particular circumstances suggesting a meaningful inconsistency in punishment and particular circumstances suggesting that gender bias was a motivating factor behind the inconsistency.  In other words, to prevail on a "selective enforcement" claim, the plaintiff must show that a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender.

*Purdue,* 281 F. Supp. 3d at 784 (collecting cases); *see also Ludlow v. Northwestern Univ.*, 125 F. Supp. 3d 783, 792 (N.D. Ill. 2015).  Such "comparator" allegations are essential at the initial pleading stage, and they must assert "intentional discrimination" rather than mere conclusions about how men receive less-favorable treatment than women within Title IX related proceedings. *Id.* at 793 (noting absence of disparate impact theory under Title IX and dismissing claim because plaintiff "does not make any allegation that a female employee would have been treated more favorably in the same circumstance"); *Austin v. University of Oregon*, No. 6:16-cv-00647-MC, 2016 WL 4708540 at *8 (D. Or., Sept. 8, 2016) (dismissing selective enforcement claim that lacked sufficient comparator allegations).

The Complaint focuses on interim measures imposed on Plaintiff while the claims against him were proceeding but lacks any allegation relating in any way to how female students accused of sexual assault were treated in any case.  Moreover, he alleges nothing about a truly similarly-situated female student – someone accused of two separate sexual assaults – or, if such a student exists, how the University allegedly treated her any differently.  The absence of such allegations requires dismissal of Count II for failure to state a viable selective enforcement claim. *Columbia College Chicago*, 299 F. Supp. 3d at 957 (dismissing claim because respondent "fails

to allege that a female who, like him, had been accused of sexual assault would not have been subjected to the exact same disciplinary proceedings"); *Cummins*, 662 Fed. Appx at fn. 10 ("because appellants do not allege that a similarly accused female was treated differently under UC's disciplinary process, the 'selective enforcement' standard is inapplicable"); *Rolph v. Hobart & William Smith Colleges*, 271 F.Supp.3d 386, 404 (W.D.N.Y. 2017) (rejecting selective enforcement claim because complaint conceded that "women rarely, if ever, are accused of sexual harassment by the Colleges ... which suggests that a similarly-situated comparator may not exist.").

### 3. Plaintiff Does Not and Cannot Assert a Claim for "Erroneous Outcome."

For the sake of clarity, Plaintiff's Complaint also references the "erroneous outcome" theory as a judicially-recognized "category" of Title IX claims without specifically relying on that theory or alleging facts needed to support it.  Compl., ¶157; *see Purdue,* 281 F. Supp. 3d at 783-784 (noting identical alleged paragraph in operative pleading followed by reliance on only one of two theories and dismissing both theories as incapable of supporting a viable claim).  As such, the University requests that this Court rule that Plaintiff has not adequately sought to pursue this category of Title IX claim.

To the extent, however, Plaintiff may argue that the Complaint does attempt to allege an "erroneous outcome" theory, he lacks required allegations that he "was innocent and wrongly found to have committed an offense."  *Purdue,* 281 F. Supp. 3d at 774.  More specifically, a plaintiff must "allege particular facts sufficient to cast doubt on the accuracy of the <u>outcome</u> of the proceedings and then also allege particular circumstances suggesting gender bias was a motivating factor behind erroneous finding."  *Id.*  The Complaint does not challenge the outcome of the University's proceedings because it was in his favor when he was exonerated on both Title

IX charges; he was not found to have committed any offense, much less "wrongly" or for gender-biased reasons. Thus, even if Plaintiff adequately sought to rely on the "erroneous outcome" theory, Count II must be dismissed.

### E. Counts III, IV, V, and VI Fail to State Claims Under Illinois Law.

Counts III, IV, V, and VI of the Complaint allege state law claims for breach of contract, estoppel, negligence, and unfair or deceptive trade practices against the University and seek monetary damages. Because the University has not waived its Eleventh Amendment immunity and does not consent to suit in this Court, the Eleventh Amendment bars the Court from exercising jurisdiction over these claims. *See Purdue*, 281 F. Supp. 3d at 784; *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 542 (2002) ("[28 U.S.C.] § 1367(a)'s grant of [supplemental jurisdiction does not extend to claims against nonconsenting state defendants."). Counts III, IV, V and VI must be accordingly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See Purdue*, 281 F. Supp. 3d at 784.

In addition, wholly apart from the Eleventh Amendment, Plaintiff's state law contract and tort claims, Counts III, IV, and V must be dismissed for lack of jurisdiction because these claims may be brought, if at all, only in the Court of Claims of the State of Illinois. 705 ILCS 505/8(b), (d); *see also Bullock v. Bd. of Trustees of Univ. of Illinois*, No. 93 C 7123, 1995 WL 124160, at *1-2 (N.D. Ill. Mar. 20, 1995). Further, even if this Court had jurisdiction to consider Plaintiff's state law claims, for the reasons set forth below they must be dismissed for the additional reason that they fail to state a claim pursuant to Rule 12(b)(6).

### 1. Plaintiff Fails to Plead a Viable Breach of Contract Claim (Count III).

To state a breach of contract claim, Plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) his performance of the contract; (3) breach by the University; and (4) a resulting injury. *See Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001). Plaintiff

alleges that the University's "policies and procedures governing the student conduct process, including but not limited to the policies and procedures contained in the Code of Student Conduct, the Sexual Misconduct Policy, and related terms and provisions" created a contractual promise "that students are to have a fair and impartial disciplinary process."  Cmplt., ¶¶ 171, 173. He claims that the University breached these alleged obligations in the following manner:

- By "fail[ing] to conduct a fair and impartial process, including imposing a suspension prior to affording [Plaintiff] a hearing" and not affording Plaintiff the "procedural guarantees that generally accompany such a hearing, such as the right to confront one's accuser, and cross-examine and challenge any witnesses against him, all before an impartial and objective fact-finder."

- By "fail[ing] to promptly rescind the previously imposed sanctions after [Plaintiff] was vindicated at two adjudicatory Title IX hearings."

- By "improperly plac[ing] the burden of proof on [Plaintiff] to prove that the accusations against him were not true after [the University] had already imposed severe sanctions on [him]."

*Id*. ¶¶ 174-75.

As an initial matter, Plaintiff has failed to identify any enforceable contractual promise. The University has a legal obligation to investigate and respond to charges of sexual misconduct, and the written procedures governing this pre-existing legal obligation accordingly cannot form the basis of Plaintiff's breach of contract claim.  *See Moehling v. W.E. O'Neil Constr. Co.*, 170 N.E.2d 100, 106 (1960) ("a promise to do something one is already obligated to do is no consideration and creates no new obligation").

Even assuming Plaintiff could base his breach of contract claim on the University's pre-existing process for investigating and resolving charges of sexual misconduct, such a claim fails because Plaintiff has not, and cannot, identify a specific and definite contractual promise made by the University about its process that the University breached.  To maintain a breach of contract action based on the University's procedures, Plaintiff must, as a threshold matter,

identify a specific "offer or promise by the [University]" contained in those materials "which created a power of acceptance in [Plaintiff]" and "justif[ies] an understanding that a commitment had been made" by the University. *Abrams v. Illinois Coll. of Podiatric Med.*, 395 N.E.2d 1061, 1065 (Ill. App. Ct. 1979). The crux of Plaintiff's claim is that the University improperly imposed an interim suspension after receiving a complaint of sexual misconduct against him and pending the investigation and adjudication of that complaint. The 2016 Code of Student Conduct, however, expressly authorizes such action by the University. Specifically, the Code provides:

> The Vice President for Student Affairs (VPSA) or designee shall be responsible for the determination of any other interim restrictions, including but not limited to restrictions from contracting specific individuals, residence hall restriction, and/or restrictions from other specific University locations.
>
> Whenever an interim action is taken, a proceeding to resolve alleged violations of the Code shall be convened at the earliest possible time. The interim actions may remain in effect until a final decision has been reached, including any appropriate appeals process, at the discretion of the VPSA or designee. In cases where an interim suspension is removed or a suspension is not a sanction following the student conduct process, effort will be made to restore the student formerly on interim suspension to academic wholeness.

Cmplt. Ex. C, p. 5.

The allegations of the Complaint also directly contradict Plaintiff's assertions that the University applied the incorrect standard of proof; that he did not have the opportunity to present his side of the story to an impartial and objective fact-finder at the hearing on the claims against him; and that the University did not promptly rescind the interim suspension. Specifically, the Complaint alleges that:

- In both cases involving Plaintiff, the University, applying the preponderance of the evidence standard, found in Plaintiff's favor. Cmplt. ¶103.

- Plaintiff was notified on these findings on February 1, 2017, and the parties were given the opportunity to submit an appeal within 10 days. Cmplt. ¶¶103, 104.

- On February 14, 2017, after the deadline had passed and no party had appealed, the University informed Plaintiff that the decisions from the hearings were final and that he would be receiving an official notification regarding the interim suspension, campus restriction, and contact restrictions. Cmplt. ¶108.

- On February 23, 2017, Plaintiff received a letter from the VPSA indicating that the interim suspension, campus restrictions, and contact restrictions were rescinded. Cmplt. ¶109.

Plaintiff's own allegations and the University's Code of Student Conduct thus contradict Plaintiff's conclusory allegations that the University breached any alleged contract, and establish that the University followed its procedures with regard to the sexual misconduct complaints against him.

Separately, Count III is fatally defective because Plaintiff has not alleged any facts to support his conclusory allegations that the University's decision was made "arbitrarily, capriciously, and in bad faith," meaning that it was "without any discernible rational basis," which a student must in making a breach of contract claim in this context. *See Sams v. Board of Trustees of Illinois State University*, 65 Ill. Ct. Cl. 127, 133 (Ill. Ct. Cl. 2013) (citing *Frederick v. Northwestern University Dental School*, 247 Ill. App. 3d 464, 471 (1st Dist. 1993)); *see also DiPerna v. Chicago Sch. of Prof'l Psychology,* No. 17-3351, 2018 WL 3121236 (7th Cir. June 26, 2018) (endorsing and applying arbitrary and capricious standard under Illinois law). Courts have adopted this deferential standard because they are reluctant to interfere with academic affairs and regulation of student conduct. *Id.* Rather, to warrant judicial review, a university's decision must be completely irrational, to such an extreme that the university arguably "did not actually exercise professional judgment." *Id.* at 133-34 (quoting *Raethz v. Aurora University*, 346 Ill. App. 3d 728, 732 (2nd Dist. 2004)); *DiPerna,* 2018 WL 3121236, *fn 11. *See also Univ. of Chicago*, 2017 WL 4163960, at *8 ("And apart from anything else, the University is entitled

to exercise discretion in the discipline of its students without being second-guessed by federal courts, so long as its exercise of discretion is not "clearly" unreasonable.").

Analyzed against this standard, Plaintiff's breach of contract claim is insufficient.  The essence of Plaintiff's claim is that he disagrees with the University's decision to temporarily suspend him.  Plaintiff's disagreement, however, does not provide a basis for this Court to review the University's decisions in this matter, which require only a "rational basis."  His own allegations demonstrate the reasoning and professional judgment behind the University's decision to suspend Plaintiff:  he was accused of sexual misconduct by two different students in short succession such that, for safety reasons, he was suspended until such complaints could be thoroughly investigated.  The Complaint provides no basis under established Illinois law for this Court to review the University's decisions in this matter, and Count III should be dismissed.

### 2.    Plaintiff Fails to Plead A Viable Promissory Estoppel Claim (Count IV).

To state a promissory estoppel claim against the University under Illinois law, Plaintiff must allege that (1) the University made an unambiguous promise, (2) he relied on that promise, (3) his reliance was expected and foreseeable by the University, and (4) he relied on the promise to his detriment.  *See Straka v. Francis*, 867 F. Supp. 767, 777 (N.D. Ill. 1994) (dismissing plaintiff's promissory estoppel claim pursuant to 12(b)(6)).  The Complaint fails to satisfy any of these elements.

Plaintiff alleges that he relied on alleged promises from the University that he "would not suffer [] harassment by fellow students and would not deny [Plaintiff] his procedural rights should he be accused of a violation of [University] policies."  Cmplt. ¶ 183.  These allegations are insufficient to allege a promissory estoppel claim. *See Columbia College Chicago*, 299 F. Supp. 3d at 961  (purported promises in student polices about disciplinary process were "broad

statements reflecting [its] goals for fair hearings and non-discrimination compliance under Title IX" and "not the type of unambiguous promises that give rise to a promissory estoppel claim"); *Univ. of Chicago*, No. 1:16cv08298, 2017 WL 4163960, at *10 (N.D. Ill. March 2, 2017) (none of the university's alleged promises to adjudicate complaints in fair and impartial manner "is definite enough to constitute an unambiguous promise" within the meaning of the promissory estoppel doctrine) (emphasis in original).   Plaintiff's support of the other required elements of estoppel are mere conclusions and therefore must be disregarded.   Accordingly, Count IV fails to state a claim and must be dismissed.

### 3.   Plaintiff Fails to Plead a Viable Negligent Infliction of Emotional Distress Claim (Count V).

To state a claim of negligent infliction of emotional distress, Plaintiff must allege (1) that the University owed Plaintiff a duty; (2) that the University breached that duty; and (3) that Plaintiff's injury was proximately caused by the breach.  *See Columbia College Chicago*, 299 F. Supp. 3d at 965; Plaintiff must also show that he suffered a physical impact or injury that was contemporaneous with the University's negligent conduct.  *See id*. (citing *Schweihs v. Chase Home Finance LLC*, 77 N.E.3d 50, 61 (2016)); *Univ. of Chicago*, 2017 WL 4163960, at * 5 (dismissing plaintiff's NIED claim because he did not suffer any contemporaneous physical injury or impact with the University's processing of the sexual misconduct claims against him). Count V fails to state a claim for NIED for multiple reasons.

Most fundamentally, Count V fails because Plaintiff does not allege that he suffered a physical impact or physical injury during the University's investigation and resolution of the sexual misconduct allegations against him, as Illinois law requires. *See Schweihs*, 77 N.E.3d at 58-61. In addition, Count V fails because Plaintiff fails to plead a cognizable duty owed to him by the University.  Plaintiff alleges that the University owed him a "duty of reasonable care in

providing a fair and impartial process for investigating and adjudicating the charges against him and from protecting him from foreseeable harm." Cmplt. ¶ 188. This is insufficient as a matter of law. Courts have consistently found that the university-student relationship is not the type of "special relationship" that would obligate the university to protect the student form harm. *Columbia College*, 299 F. Supp. 3d at 962-63 (collecting cases); *see also Rabel v. Ill. Wesleyan Univ.*, 514 N.E.2d 552, 560-61 (Ill. App. Ct. 1987) (no duty to protect student based on university handbook or policies). Further, courts have specifically rejected negligence claims where, as here, students have claimed they were wrongly disciplined for sexual assault, finding that universities do not owe a duty to students when conducting disciplinary proceedings. *Columbia College*, 299 F. Supp. 3d at 963 (citing cases). For these reasons, Count V fails to state a claim and must be dismissed.

      4.     **Plaintiff's Claim under The Illinois Consumer Fraud Act Claim is not Actionable.**

The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (the "Act"), prohibits "unfair or deceptive acts or practices," including "false promise[s], misrepresentation[s], or … omission[s] of any material fact," in the conduct of any trade or commerce. 815 ILCS 505/2. The Act provides for a private cause of action as follows: "Any person who suffers actual damage as a result of a violation of this Act committed by *another person* may bring an action against *such person*. …" 815 ILCS 505/10a(a) (emphasis added). The Act defines "person" as "any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof." 815 ILCS 505/1(c). The legislature expressly limited the application of the

Act to "any natural person" and not to the broader "person." *Bd. of Educ. of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580, 598 (Ill. 1989)

The University does not fall under the definition of a "person" under the Act, and Plaintiff therefore cannot bring a private cause of action against the University under Section 10a of the Act.  *See Bd. of Educ. of City of Chicago*, 546 N.E.2d at 598-99 (affirming dismissal of plaintiff school district's claim under the Act on the ground that a school district or body politic is not a "person" within the meaning of the Act).   Count VI must be dismissed.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the University respectfully requests that the Court grant its Motion to Dismiss all counts of Plaintiff's Complaint with prejudice.

Respectfully submitted,

BOARD OF TRUSTEES OF
ILLINOIS STATE UNIVERSITY

By:     s/Peter G. Land
One of Its Attorneys

Peter G. Land - 06229659
peter.land@huschblackwell.com
Gwendolyn B. Morales - 06297233
gwen.morales@huschblackwell.com
Katelan E. Little - 06309560
katelan.little@huschblackwell.com
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
(312) 526-1631

July 9, 2018

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on July 9, 2018 he electronically filed the foregoing Memorandum in Support of Defendants' Motion to Dismiss with the Clerk of the Court using the CMECF system which will send notification of such filing to the following individuals listed below:

> Brendan D. Bukalski
> Johnson Law Group LLC
> 115 W. Front Street
> Bloomington, IL 61701
>
> Mark D. Johnson
> Johnson Law Group LLC
> 115 W. Front Street
> Bloomington, IL 61701

> By: <u>s/Peter G. Land</u>